# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA BARRICK, | : | CIVIL NO. 1:14-CV-02209 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| PENN TOWNSHIP, *et al*., | : | (Magistrate Judge Schwab) |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

Before the Court is the Defendants' collective motion (*doc. 20*) to dismiss the Plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that follow, we recommend granting in part and denying in part this motion.

## II. Background.

### A. Procedural Background.

The plaintiff, Joshua W. Barrick ("Barrick"), originally commenced this action in the Perry County Court of Common Pleas, Pennsylvania on or about September 18, 2014. *See doc. 4-1* at 1.  A notice of removal was filed on November 18, 2014, by the following defendants: (1) Penn Township; (2) Penn Township Police Department; (3) Board of Supervisors; (4); Brian McGuire; (5) Henry Holman, Jr.; (6) Brian K. Peters; (7) Richard Pickles ("Chief Pickles"); (8) Christopher Zampogna ("Officer Zampogna" or "Zampogna"); and (9) Tricia Moench ("Officer Moench" or "Moench"). *Doc. 1*.  In the notice of removal, the defendants alleged federal question jurisdiction, pursuant to 28 U.S.C. § 1331. *Doc. 1* at 5.  Barrick filed a response to the defendants' notice of removal and explained that he "does not contest the removal of his case to this Court." *Doc. 4* at 1.

On December 23, 2014, Barrick filed an amended complaint[1] (*doc. 12*), lodging a host of federal and state law claims against the following four defendants: (1) Penn Township; (2) Chief Pickles; (3) Officer Zampogna; and (4)

---

[1] Based upon the record, it appears that this may be Barrick's "second" amended complaint, but since the Defendants and Barrick have both referred to this as the "amended complaint," we will do the same for purposes of this Report and Recommendation.

Officer Moench (collectively, the "Defendants").  In response, the Defendants filed a collective motion (*doc. 20*) to dismiss Barrick's amended complaint, along with a brief in support (*doc. 22*).  The motion is ripe for disposition.

### B. Factual Background.[2]

On July 11, 2013, at approximately 10:00 p.m., in Duncannon, Pennsylvania, Officer Zampogna and Constable Steele approached Barrick and his friend, Raymond Jones ("Jones"), who were sitting inside of a parked vehicle, with a warrant to arrest Barrick for unpaid fines.  *Doc. 12* at ¶ 2.  Jones, in an attempt to escape, "leaped" from the vehicle and fled the scene, only to be caught and detained.  *Id.* at ¶¶ 2, 3.  Barrick, on the other hand, was arrested without incident. *Id.* at ¶ 3.  Officer Moench, who arrived at some point during the arrests, and Officer Zampogna retraced Jones' flight path and found drugs.  *Id.* at ¶ 4.  Then, as alleged by Barrick, Officer Zampogna entered a house, presumably near where the vehicle was parked, without permission or a warrant.  *Id.* at ¶ 5.  While in the house, Officer Zampogna questioned Barrick's mother, Kathy Kitner ("Kitner"), about the whereabouts of Barrick's brother, Jason Barrick.  *Id.*  Kitner had "no clue" where the brother was.  *Id.*  After looking upstairs and downstairs, Officer

---

[2] In accordance with Rule 12(b)(6), we will not only "accept all factual allegations in the complaint as true," but we will also "construe the complaint in the light favorable to the plaintiff[.]"  *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

Zampogna walked back outside and transported Barrick to Penn Township Police Department. *Id.* at ¶¶ 5, 6.

On or about July 15, 2013, Barrick was transported to his hearing, where he not only received time served for the unpaid fines, but he also received charges of possession, possession with intent to distribute, and paraphernailia. *Id.* at ¶¶ 7, 8. The charges were later dropped due to a lack of evidence that Barrick had any knowledge of his friend's drugs. *Id.* at ¶ 9. However, on October 5, 2013, Barrick was rearrested for the same charges. *Id.* at ¶ 11. According to Barrick, the affidavit of probable cause had been amended by Officer Zampogna to include the following alleged conversation between Constable Steele and Barrick: "[Constable] Steele turned to Barrick and asked, '*Want to take a guess what they just found?*', *Barrick allegedly replied, 'yeah . . . they found the dope.*'" *Id.* at ¶ 12 (emphasis in original). On October 18, 2013, Barrick had a preliminary hearing on the refiled charges, and at this hearing, Officer Zampogna and Barrick "discussed working out a deal to release Barrick on ROR Bail if he set up drug busts for Zampogna[.]" *Id.* at ¶ 14. Barrick agreed to the deal and was released. *Id.* at ¶ 15.

On December 5, 2013, Zampogna called Barrick, asking him to set up drug buys, but Barrick would not agree to such drug buys, explaining that Zampogna had waited too long, as he (Barrick) was no longer associated with such activities or people. *Id.* at ¶¶ 18, 19. Eight days later, Officer Zampogna called again to say

4

that he and Officer Moench were standing in his bedroom talking with his fiancé, Tabitha Foy ("Foy"), and asked Barrick whether he had set up drug buys yet. *Id.* at ¶¶ 20, 21. When Barrick returned home later that night, he found the top hinge of the basement door completely detached from the door jam. *Id.* at ¶ 23. He also found the attic and the second bedroom door hanging open. *Id.*

On or about December 14, 2013, Barrick and Foy were leaving a convenience store when Officer Moench approached them and put Officer Zampogna on speaker phone. *Id.* at ¶¶ 25, 27. Zampgona asked Barrick whether he had set up drug buys yet. *Id.* at ¶ 28. Barrick informed Zampogna that he could not help him and that he needed a warrant to enter his home. *Id.* Barrick also asked Officer Moench why she and Zampogna were at his house without a warrant, to which Moench replied, "*there were recent [break-ins] around the neighborhood[,] and they were looking for a TV[ ] and narcotics that were allegedly taken from Barrick's neighbor[']s house[.]*" *Id.* at ¶ 30 (emphasis in original). Barrick, again, told Moench not to come in his house without a warrant. *Id.* That night, Barrick and his fiancé, out of fear of what the police might do, did not stay at their house, and instead, stayed at Foy's aunt's house. *Id.* at ¶ 31.

The following day, on December 15, 2013, Barrick attempted to call Penn Township Police Department to make a complaint against Officers Zampogna and Moench, but he was forced to leave a voicemail, which the Department never

returned.  *Id.* at ¶ 32.  That same day, Zampogna left a voicemail on Barrick's phone, informing Barrick that he was in Barrick's house, looking for him again. *Id.* at ¶ 33.  On December 16, 2013, only one day later, Barrick's mom found Barrick's basement door broken off and laying outside on the ground.  *Id.* at ¶ 34.[3] Barrick tried to call the Chief of Police or someone else in charge at the Penn Township Police Department, but, again, was forced to leave a voicemail, which was never returned.  *Id.* at ¶ 35.

On or around December 17, 2013, Barrick and Derek Kitner "wedged two doors together in the laundry room to prevent entry into [his] house from the basement[.]"  *Id.* at ¶ 37.  Later that day, Barrick and his fiancé went to a friend's house, *id.* at ¶ 38, where Officers Zampogna and Moench would eventually show up and knock on the door.  *Id.* at ¶ 39.  In fear, Barrick asked his friend not to tell the officers he was there, and the officers left.  *Id.* at ¶ 40.  Zampogna returned an hour later, but was told to leave.  *Id.* at ¶¶ 42, 43.  About half an hour later, Zampogna returned and, again, began knocking.  *Id.* at ¶ 46.  This time, Barrick went outside and confronted him. *Id.* at ¶ 47.  Barrick asked Officer Zampogna why he was knocking on his "friends doors"[4] and entering his home illegally, to

---

[3] While it is unclear to whose house Barrick is referring, we conclude, based on the context of the preceding paragraph (*id.* at ¶ 33), that he is referring to his house.

[4] It is unclear whether Barrick is referencing multiple friends or just a single friend here.

which Officer Zampogna replied that Barrick was supposed to be setting people up for him, but had not done so.  *Id.* at ¶¶ 49, 50.  Barrick told Officer Zampogna that he waited too long to call and that he is clean now and wants to be left alone.  *Id.* at ¶ 51.  Officer Zampogna called Barrick a liar.  *Id.* at ¶52.

A couple days later, on or about December 20, 2013, Barrick's mother informed him that he needed to get a hold of Officer Zampgona or a warrant would be issued for his arrest.  *Id.* at ¶ 55.  Barrick, later that day, found two notes from Officer Zampogna at his house, one asking Barrick to call Zampogna, and the other stating that Zampogna needed to talk to Barrick.  *Id.* at ¶¶ 56, 57, 59.  Angered, Barrick called Officer Zampogna, and the two agreed to meet at Barrick's house to talk.  *Id.* at ¶¶ 62, 64.  Once Officer Zampogna arrived, they went inside Barrick's house, and Barrick demanded that he stop coming in his house and that he leave his friends and family alone.  *Id.* at ¶ 65.  Officer Zampogna told Barrick that he wanted him to set people up.  *Id.* at ¶ 70.  Barrick said no and explained that he is "*done with that shit*," and he "*[wouldn't] even know who to call anymore*."  *Id.* at ¶ 71.  Zampogna then told Barrick that there have been break-ins around town and asked Barrick whether he had heard that a bottle of narcotics had been taken from his "neighbors house."[5]  *Id.* at ¶¶ 72, 73.  Barrick said he knew nothing about it, *id.* at ¶ 74, but Zampgona did not believe Barrick and told him that if he did not set up

---

[5] It is unclear whether Barrick is referencing multiple neighbors or just a single neighbor here.

drug buys, then he (Zampogna) would file the "charges for the Theft of Movable Property Affidavit of Probable Cause" against Barrick, thereby revoking his bail. *Id.* at ¶¶ 75, 77.

On December 25, 2013, roughly five days later, Barrick was pulled over at 2:45 a.m. by Officer Fe Duke in Duncannon, Pennsylvania for a headlight being out. *Id.* at ¶ 85. During the traffic stop, Officer Fe Duke found narcotics (prescribed to William Minick), an expired inspection sticker, no insurance, and determined that Barrick wreaked of alcohol. *Id.* at ¶ 86. As alleged by Barrick, Officer Fe Duke called Officer Zampogna and explained to him that he had Barrick. *Id.* at ¶ 88. After the phone call, Fe Duke handed Barrick his suspended license (which had "a state order pick-up")[6] and his keys to the van and told Barrick that he needed to call Officer Zampogna. *Id.* at ¶¶ 87, 89. Two days later, Officer Zampgona arrested Barrick and took his license, cell phone, and access card.[7] *Id.* at ¶ 90. On January 22, 2014, Barrick received four traffic citations, pertaining to his stop on the night of December 25, 2013, and a $250.00 citation for driving with a suspended license. *Id.* at ¶ 91.

---

[6] Barrick does not expound on this.

[7] Barrick clarifies in his brief in opposition (*doc. 37*) to the Defendants' motion to dismiss that he is not challenging this stop; rather, he only mentions this stop "in order to show an end to the events [alleged] in his [amended] complaint." *Id.* at 7.

It is based upon these facts that Barrick has asserted a host of federal and state law claims[8] and has requested relief in the form of compensatory damages, punitive damages, and pain and suffering. *Id.* at 24.

## III. Legal Standard.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer*, 605 F.3d at 229.   In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

---

[8] For most of the claims set forth in the amended complaint, it is difficult to ascertain whether Barrick is asserting a federal claim, a state law claim, or both because he vaguely cites to both the United States Constitution and the Pennsylvania Constitution. The Defendants, however, have not attempted to identify, or distinguish between, the federal and state law claims in this action, and instead, they have merely presented their arguments generally.  Thus, in order to present a precise Report and Recommendation we have characterized and analyzed Barrick's claims as best we could under both federal and state law. *See Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) ("We also note that because [Plaintiff] has filed his complaint *pro se*, we must liberally construe his pleadings, and we will apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002))).

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). With respect to the benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a

complaint must do more than allege the plaintiff's entitlement to relief." *Fowler*, 578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

## IV. Discussion.

### A. Federal Claims.[9]

#### 1. Unlawful Search[10]

Barrick makes a claim of an unlawful search of his home against Officers Zampogna and Moench under the Fourth Amendment. The Defendants argue that Barrick lacks standing to bring this claim because he was "actually staying elsewhere" at the time of the alleged entry, and further, because he has not established that the alleged entry "violated *his* rights" (*doc. 22* at 19, 20 (emphasis in original)). Under the Fourth Amendment, "warrantless searches of a home are impermissible absent consent or exigent circumstances[.]" *Steagald v. United States*, 451 U.S. 204, 216 (1981); *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403

---

[9] We have jurisdiction over Barrick's federal claims pursuant to 28 U.S.C. § 1331.

[10] Preliminarily, we conclude that Barrick's Fourth Amendment claim, based on an alleged unlawful search of his home, is not barred by *Heck*. "In *Heck v. Humphrey*, the Supreme Court held that a plaintiff may not recover damages under § 1983 if doing so would necessarily invalidate the plaintiff's prior conviction." *Broadwater*, 945 F. Supp. 2d at 583 (citing *Heck v. Humphrey*, 512 U.S. 477, 486-97 (1994). "The *Heck* Court[, however,] specifically noted that a suit for damages attributable to an allegedly unreasonable search was still valid under its holding, even if the search had produced evidence that aided in the plaintiff's outstanding conviction." *Id.* (citing *id.* at 487 n.7). Here, Barrick has brought a claim for damages based on an alleged unreasonable search of his home. His claim does not imply the invalidity of his underlying convictions—possession with intent to deliver and theft. *See doc. 22* at 11, 15; *see also Broadwater v. Fow*, 945 F. Supp. 2d 574, 583 (M.D. Pa. 2013) (concluding that plaintiff's Fourth Amendment claims based on an alleged unlawful search of his home and the use of excessive force were not barred by *Heck*, as they did not imply the invalidity of plaintiff's underlying conviction). Therefore, *Heck* does not bar his claim.

(2006) ("It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004))).  In the amended complaint, Barrick alleges that Officers Zampogna and Moench entered his house, and on two occasions broke his basement door, without a warrant, permission, or exigent circumstances.  *Doc. 12* at ¶¶ 20-23, 28-30, 34, 49, 67, 84; *id.* at 12, 20.  Barrick further alleges that as a result of these unlawful searches, he suffered from emotional anguish and distress; he lived in constant fear in his own home; he lost a relationship with his fiancé; and he incurred 200 dollars in expenses to repair the basement door.  *Id.* at 12, 20.  Thus, for purposes of the Defendants' motion, we conclude that Barrick has pleaded enough facts to establish that he resided at the subject premises, and therefore, had an expectation of privacy therein.

We further conclude that he has alleged an injury in fact. As such, Barrick has standing to bring this claim.  *See Barto v. Combs*, No. 3:14-CV-01989, 2015 WL 1286252, at *3-4 (M.D. Pa. 2015) (concluding that plaintiff had standing to bring her Fourth Amendment claim where she asserted an expectation of privacy in her own home and where she alleged injuries, including mental anguish and feelings of insecurity in her home).  And while we acknowledge that Barrick was not present when Officers Zampogna and Moench unlawfully entered his home, we are not persuaded that he therefore lacks standing to bring his Fourth

14

Amendment claim. *See id.* (rejecting the argument that plaintiff lacked standing to bring her Fourth Amendment claim, where plaintiff was not home at the time of the alleged unlawful entries). Thus, at this early state of the litigation, Barrick, has adequately stated an unlawful search of his home under the Fourth Amendment, and we accordingly recommend that his claim should proceed in this action.

### 2. Conspiracy.[11]

Barrick also alleges a conspiracy claim against Officer Zampogna, Chief Pickles, and Officer Moench. The Defendants argue that Barrick "does not plead facts to plausibly show a conspiracy to violate his rights." *Doc. 22* at 25.

Generally, to establish a conspiracy under § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Laurensau v. Romarowics*, 528 Fed. Appx. 136, 140 (3d Cir. 2013) (quoting *Parkway Garage*, *Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993)). More specifically, a plaintiff must establish the elements of a state law conspiracy claim. *See Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974). In Pennsylvania, "[t]he essential elements of a claim

---

[11] "As a threshold matter . . . a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011). Because we have concluded that Barrick has shown a deprivation of a federally protected right,—i.e., an unlawful search of his home under the Fourth Amendment—he has met this threshold. We are therefore unpersuaded by the Defendants' argument that "[b]ecause this Court should dismiss the other claims, this Court should also dismiss the conspiracy claim." *Doc. 22* at 25.

for civil conspiracy are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Williams v. W. Wayne Sch. Dis*t., Civ. No. 12–cv–2074, 2013 WL 4718920, *8 (M.D. Pa. 2013) (citing *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008)). "[A] conspiracy claim 'must include at least a discernable factual basis to survive a Rule 12(b)(6) dismissal.'" *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (quoting *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009)).   In other words, Barrick must allege "some factual basis to support the existence of the elements of a conspiracy," namely the existence of an agreement and concerted action. *Id.* (citing *Capogrosso*, 588 F.3d at 184); *Savage v. Judge*, 644 F. Supp. 2d 550, 561 (E.D. Pa. 2009) (stating that an agreement to do an unlawful act is "the *sine qua non* of a conspiracy").

Here, the amended complaint does not assert a § 1983 conspiracy claim against Officer Zampogna, Officer Moench, and Chief Pickles because Barrick has not sufficiently alleged that all three Defendants reached an agreement to deprive him of a constitutional right.  In the amended complaint, Barrick alleges that all three defendants acted as co-conspirators by breaking the basement door at Barrick's home and illegally entering, so that they could harass and intimidate him,

and find stolen narcotics and TV's.   *Doc. 12* at 13, 20, 21.   Although Barrick alleges that the conspiracy "involve[ed] an apparent code of silence between [the defendants]," (*doc. 12* at 13) an "apparent code" is insufficient to raise a reasonable inference that these defendants reached an agreement or understanding to deprive Barrick of a federally protected right.   *See Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) ("[Plaintiff's] vague reference to a perceived 'code of silence' was insufficient to establish that Defendants reached an agreement to deprive him of a constitutional right.").   Moreover, although Barrick alleges that "the officers['] acts alone impliedly demonstrate that they agreed to engage in a criminal and unconstitutional act" (*doc. 37* at 16), we are unpersuaded.   *See Jean-Pierre*, 2008 WL 755807, at *4 ("[A] plaintiff cannot rely on subjective suspicions and unsupported speculation.").   Rather, we conclude that the amended complaint is devoid of any facts which show a meeting of the minds between all three defendants—i.e., that Officer Zampogna, Officer Moench, and Chief Pickles reached an agreement among themselves to unlawfully enter Barrick's home, search his home, harass and intimidate him, and find stolen goods and narcotics.

Barrick's amended complaint does, however, state a § 1983 conspiracy claim against Officer Zampogna and Chief Pickles.   Barrick's allegations raise an inference of an agreement or an understanding between these two defendants pursuant to communication, consultation, and a command.   *See Luck v. Mount Airy*

*No. 1,* LLC, No. 3:12-CV-887, 2014 WL 4105235, at *6 (M.D. Pa. 2014) ("The plaintiff must allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." (quoting *Flanagan v. Shively*, 783 F.Supp. 922, 928 (M.D. Pa. 1992))). Specifically, Barrick alleges that Officer Zampogna, while sitting in Barrick's kitchen, admitted that Chief Pickles gave him the command to come down hard on Barrick since he was not cooperating with setting up drug buys. *Doc. 12* at ¶¶ 62-67; *id.* at 19; *see also doc. 37* at 16. Barrick further alleges that Zampogna admitted to him that Chief Pickles was aware of what Zampogna was doing and that he would not get in trouble for entering Barrick's home. *Id.* at ¶ 67. Moreover, Barrick alleges that, in furtherance of this conspiracy, Officer Zampogna unlawfully entered his home on several occasions. *Doc. 12* at ¶¶ 20-23, 28-30, 34, 49, 67, 84; *id.* at 12, 20. Finally, Barrick alleges that these unlawful entries resulted in, among other things, damage to his home. *Id.* at ¶¶ 23, 34. Thus, based on these allegations, we conclude that Barrick has raised an inference of an agreement between Officer Zampogna and Chief Pickles to deprive Barrick of a federally protected right, an act in furtherance of that agreement, and resulting damage. Accordingly, we recommend that Barrick's conspiracy claims against Officer Zampogna and Chief Pickles should proceed in this action, but that his conspiracy claim against Officer Moench should be dismissed.

### 3. Retaliation.

Barrick further asserts a retaliation claim against Officer Zampogna.  In response, the Defendants argue that "[Barrick] fails to show that any Defendant acted out of a desire to punish him for exercising his rights."  *Doc. 22* at 25.  In order for Barrick "[t]o prevail on a retaliation claim, [he] must prove '(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation.'" *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (quoting *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004)).  Here, Barrick generally argues that Officer Zampogna retaliated against him because he exercised his right in refusing to work with law enforcement.  *Doc. 37* at 15.  To support his argument, Barrick alleges that Officer Zampogna consistently badgered him to set up drug buys.  He further alleges that a conversation took place on or about December 20, 2013, in Barrick's kitchen, where Officer Zampogna threatened Barrick with the filing of charges (which would have revoked Barrick's bail) if he refused to set up drug buys.  *Doc. 12* at ¶¶ 62-75; *id.* at 16-17.  Moreover, per the allegations, Zampogna told Barrick during this conversation that if Barrick failed to "do something" then Zampgona was "gonna have to do something," because Chief Pickles was wondering why Zampogna could not "control" his confidential informant, thereby making Zampogna look bad. *Id.* at ¶ 81.  Just days after this conversation, Barrick alleges

that the "charges for the Theft of Movable Property Affidavit of Probable Cause" were filed. *Id.* at ¶ 77.   Thus, Barrick has sufficiently raised an inference that Officer Zampogna acted out of a desire to punish Barrick for refusing to work with law enforcement.  Given the sparse briefing from the Defendants and the deference we must give to Barrick's factual allegations, we conclude that this claim should proceed, and we therefore recommend that the Defendants' motion be denied with respect to Barrick's retaliation claim.

### 4. Abuse of Process.

Barrick also seeks to hold Officers Zampogna and Moench liable for abuse of process.  The Defendants argue that they "did nothing to abuse the criminal process after Officer Zampogna filed the criminal complaints." *Doc. 22* at 32. They further press that "[n]one of Barrick's allegations show any illegal purpose for the charges against him[.]" *Id.* at 33.

"[A] section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (quoting *Jennings v. Shuman*, 567 F.2d 1213, 1217 (3d Cir. 1977)).  "Courts have held that '[w]hen process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process, a cause of action for abuse of process can be maintained.'" *Bristow*

*v. Clevenger*, 80 F. Supp. 2d 421, 431 (M.D. Pa. 2000) (quoting *Brown v. Johnston*, 675 F.Supp. 287, 290 (W.D. Pa. 1987)). "Thus, '[t]he gravamen of [a malicious abuse of process claim] is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.'" *Dunne v. Twp. of Springfield*, 500 F. App'x 136, 139 (3d Cir. 2012) (quoting Restatement (Second) of Torts § 682 cmt. a (1965)). Merely carrying out the process to its authorized conclusion, even with bad intentions, is not abuse of process. *Bristow*, 80 F.Supp.2d at 431.

Here, Barrick alleges that after Officer Zampogna filed a criminal complaint, the Officers "held" it over Barrick in order to blackmail him, extort him, threaten him, intimidate him by unlawfully entering his house, and to force his compliance in setting up drug buys, all of which Barrick argues are illegitimate purposes of a criminal complaint. *Doc. 12* at 12, 20; *doc. 37* at 24.  After liberally construing his amended complaint, we conclude that these allegations raise a reasonable inference that after the criminal complaint was filed, the process itself was put to an illegal use.  *See Mawson v. Pittston Police Dep't*, No. CIV.A. 3:13-1714, 2014 WL 3735133, at *10 (M.D. Pa. 2014) ("It is only when the process is used for an illegitimate purpose, such as extortion, forcing a defendant to surrender a legal right, or blackmail, that a claim for abuse of press lies." (citing *Bristow*, 80 F.

21

Supp. 2d at 431)).  Thus, we recommend that the Defendants' motion be denied with respect to Barrick's malicious abuse of process claims against Officers Zampogna and Moench.

### 5. *Monell* **Claims.**

Barrick's amended complaint fails to state a *Monell* claim against Penn Township.  The Defendants argue, and we agree, that Barrick has not shown that the alleged violations of his constitutional rights were inflicted by a policy or widespread practice of Penn Township.  *Doc. 22* at 26-27.  The Defendants further argue, and we agree, that allegations of negligence do not suffice for *Monell* liability.  *Id.* at 27.

A local government, such as Penn Township, cannot be sued under § 1983 for the unconstitutional acts of its employees on a theory of respondent superior. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, Barrick must show that the violation of his constitutional rights was inflicted by either a policy or a custom of the municipality.  *See Beck v. City of Pittsburg*, 89 F.3d 966, 971 (3d Cir. 1996).  "Thus, there are two ways that [Barrick] can establish municipal liability under § 1983: policy or custom." *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007)).  A municipal policy is defined as a "'statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers.'"  *Simmons v. City of*

*Philadelphia*, 947 F.2d 1042, 1059 (3d Cir. 1991) (alteration in original) (quoting *Monell*, 436 U.S. at 690).   A municipal custom is defined as "'such practices of state officials . . . [that are] so permanent and well settled as to constitute a 'custom or usage' with the force of law.'"  *Id.*  (alterations in original) (quoting *Monell*, 436 U.S. at 691).

Here, the amended complaint does not state a *Monell* claim against Penn Township.  Barrick alleges municipal liability on the basis that the Penn Township Board of Supervisors had knowledge of Chief Pickles' previous misconduct—i.e., the shooting and killing of another individual while on duty at a former police department—yet decided to hire him anyway.  *Doc. 12* at 17-18.  According to Barrick, this decision constituted deliberate indifference because Chief Pickles was permitted to improperly manage and oversee his subordinate officers at the Penn Township Police Department, including Officers Zampogna and Moench.  *Id.* at 18-19.  In accordance with municipal liability jurisprudence, however, Barrick has not alleged a Penn Township policy or custom of negligent hiring; rather, his allegations focus on a single incident of alleged negligent hiring, that is, the hiring of Chief Pickles.[12]  As the Supreme Court of the United States has emphasized, "[c]ases involving constitutional injuries allegedly traceable to [a single] hiring

---

[12] Moreover, Barrick has baldly concluded that the Board of Supervisors exhibited deliberate indifference to the hiring process of Officer Zampogna and has not set forth any factual allegations to support this conclusion.

decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 415 (1997). Thus, "[t]o prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* at 410. Guided by these meticulous standards, we cannot conclude that Barrick has sufficiently alleged that the Board's decision to hire Chief Pickles reflected a conscious disregard for a high risk that he would improperly manage and oversee an entire police department. In particular, the background of Chief Pickles—i.e., an on-duty shooting and killing of another individual—does not have a "strong" connection to the challenged conduct in this case—i.e., improper management and oversight of a police department. *See id.* at 412 ("The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong."); *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 426 (M.D. Pa. 2014) (emphasis in original) ("Courts that have addressed *Brown* have consistently interpreted it to mean that municipal liability for negligent hiring based on a single hiring decision requires the threat identified in an applicant's background to be basically *identical* to the harm eventually caused by the applicant."). Accordingly, Barrick has not satisfied the standards set

forth by the United States Supreme Court, and we therefore conclude that Barrick

has not stated a *Monell* claim on the basis of negligent hiring.

Additionally, Barrick alleges municipal liability on the basis that the Penn

Township Board of Supervisors failed to discipline Chief Pickles after he was

convicted of driving under the influence. *Doc. 12* at 18. As argued by Barrick,

this failure to discipline is "directly linked to all the malfeasant acts within the

Penn [Township Police Department]," and further, this failure to discipline "caused

[Barrick's] [c]onstitutional rights to be violated[.]" *Id.* These averments, even

considered in the light most favorable to Barrick, are simply insufficient to give

rise to municipal liability. The United States Court of Appeals for the Third

Circuit has held that: "a failure to train, discipline or control can only form the

basis for [§] 1983 municipal liability if the plaintiff can show both

contemporaneous knowledge of the offending incident or knowledge of a prior

pattern of similar incidents and circumstances under which the supervisor's actions

or inaction could be found to have communicated a message of approval to the

offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir.

1998). Barrick, however, has not sufficiently alleged that the Board of Supervisors

had knowledge of his constitutional harm while it was ongoing. *See M.S. ex rel.

Hall*, 43 F. Supp. 3d at 425 (finding no municipal liability on the basis of failure to

discipline where plaintiff did not sufficiently allege that a policymaker was aware

of the constitutional harm while it was ongoing).  Nor has Barrick sufficiently alleged that the Board had knowledge of a prior pattern of improper management and oversight of subordinate police officers at the Penn Township Police Department.  Without such facts, the Court cannot draw the inference that the Board's alleged failure to discipline Chief Pickles was taken with the "requisite degree of culpability," and therefore, we also cannot draw the inference that the Board was the "moving force" behind the constitutional violations that Barrick has alleged in his amended complaint. *See, e.g.*, *Brown*, 520 U.S. at 404 (emphasis in original) (explaining that for purposes of establishing municipal liability under § 1983, a plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.").

Barrick further alleges municipal liability on the basis that the Penn Township Board of Supervisors failed to supervise Chief Pickles and his subordinate officers. *Doc. 12* at 19.  "A municipality may be held liable for constitutional violations that result from inadequate training or supervision of its employees if the failure to train [or supervise] constitutes a custom of the municipality." *Mills v. City of Harrisburg*, 589 F. Supp. 2d 544, 556 (M.D. Pa.

2008).  The failure to train or supervise "must 'amount[ ] to deliberate indifference to the constitutional rights of persons with whom the police come in contact.'"  *Id.* (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1028 (3d Cir. 1991).  To establish deliberate indifference, the plaintiff must show that a "policymaker ignored a known or obvious risk."  *Grillone v. City of Phila.*, No. 02–CV–6916, 2003 WL 21293801, at *4 (E.D. Pa. 2008) (citing *Brown*, 520 U.S. at 409).  Barrick, however, has not alleged that the Board of Supervisors was aware of any such risk of a Fourth Amendment violation.  Nor has Barrick alleged that there were prior incidents of Fourth Amendment violations which would have put the Board on notice that more supervision was needed in order to avoid further violations.  Without such allegations, we cannot infer that the Board "ignored a known or obvious risk."  *Grillone*, 2003 WL 21293801, at *4 (E.D. Pa. 2008).  Thus, we also conclude that Barrick has failed to state a *Monell* claim on the basis of failure to supervise.  As such, we recommend that the Defendants' motion be granted with respect to Penn Township.[13]

Finally, we recommend that Barrick's request for punitive damages against Penn Township be dismissed with prejudice from this action.  "Supreme Court precedent makes it clear that punitive damages are not available under § 1983

---

[13] Although Barrick appears to also base a *Monell* claim on Penn Township's negligence, (*see doc. 12* at 17), such a claim fails as a matter of law.  *See Brown*, 520 U.S. at 407 (explaining that "[a] showing of simple or even heightened negligence will not suffice" to permit an inference of municipal liability).

against a municipality or a municipal official sued in his official capacity." *M.C. v. Pavlovich*, No. 4:07-CV-2060, 2008 WL 2944886, at *6 (M.D. Pa. 2008) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.13; *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)).   However, because punitive damages may be recovered under § 1983 against an official sued in his personal capacity, *id.* (citing *Graham*, 473 U.S. at 167 n.13), we recommend that Barrick's request for punitive damages against Chief Pickles in his personal capacity should not be dismissed from this action.  *See id.* (dismissing with prejudice plaintiff's request for punitive damages against the Borough, but not dismissing a punitive damages request against the chief of police in his personal capacity).

### 6. Failure to Supervise.

Barrick also claims that Chief Pickles failed to supervise Officers Zampogna and Moench.[14]   In order for Barrick to establish a failure to supervise claim, he must: "(1) identify with particularity what the supervisory official failed to do that demonstrates his deliberate indifference, and (2) demonstrate a close causal relationship between the identified deficiency and the ultimate injury." *Barnes v. City of York*, No. 1:10-CV-1684, 2011 WL 1398399, at *7 (M.D. Pa. 2011) (report and recommendation adopted, No. 1:10-CV-1684, 2011 WL 1396834 (M.D. Pa.

---

[14] It is unclear whether the Defendants are moving to dismiss this claim.  To the extent that they are moving to dismiss this claim, their motion should be denied.

2011)) (quoting *Kis v. County of Schuylkill*, 866 F.Supp. 1462, 1474 (E.D. Pa. 1994)) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Here, Barrick has set forth allegations that Chief Pickles was not only aware of the misconduct of Officers Zampogna and Moench, but condoned the misconduct. Specifically, Barrick alleges that he made complaints against these officers on two separate occasions, but that the Penn Township Police Department did not respond to his complaints, *Doc. 12* at ¶¶ 32, 35, nor did the Department act on his complaints. Barrick further alleges that Officer Zampgona admitted to Barrick that "'his boss (Chief Pickles) [was] aware of what Zampogna [was] doing[,]" *id.* at ¶ 67; that his boss is the one who demanded that he "come down on Barrick hard," because he thought Barrick was "bullshitting," *id.* at 19; that his boss was "getting tired of the shit" and Barrick's continual failure to set up drug buys, *id.* at ¶ 81; and that his boss "want[ed] results." *Id.* at ¶ 81. Thus, construing the complaint in Barrick's favor, we find that Barrick has sufficiently alleged that Chief Pickles, who had supervisory authority over Officers Zampogna and Moench, knew that the officers were unlawfully entering and searching Barrick's home, but failed to stop their conduct, and instead, condoned it, which ultimately resulted in further deprivation of Barrick's constitutional rights. Accordingly, we conclude that Barrick has stated a claim against Chief Pickles for failure to

supervise.  We therefore recommend that the Defendants' motion be denied with respect to Barrick's failure to supervise claim against Chief Pickles.[15]

## B. State Law Claims.[16]

As stated herein, we read Barrick's amended complaint as seeking to raise a host of state law claims, including the following intentional torts: (1) invasion of privacy; (2) trespass; (3) conspiracy; and (4) abuse of process.   While the Defendants broadly argue that they are immune to Barrick's state law claims, pursuant to Pennsylvania's Political Subdivision Tort Claims Act (the "PSTCA"), 42 PA. CON. STAT. §§ 8541-8550,  such immunity does not extend to intentional torts.  *See* 42 PA. CON. STAT. § 8550 (excluding acts of "willful misconduct" from immunity); *see also Joseph M. v. Ne. Educ. Intermediate Unit 19*, 516 F. Supp. 2d 424, 444 (M.D. Pa. 2007) ("For purposes of [§] 8550 of the PSTCA, 'willful misconduct' has the same meaning as the term 'intentional tort.'" (quoting *Delate v. Kolle*, 667 A.2d 1218, 1221 (Pa. Commw. Ct. 1995))).  Thus, we must look to the sufficiency of Barrick's allegations with respect to these torts.  *See*

---

[15]  As a final note, the Defendants, in their brief in support of their motion to dismiss, state that "The officers acted reasonably." *Doc. 22* at 17.  Although they have set forth legal standards regarding qualified immunity, the Defendants have not fully briefed this matter.  Without such briefing, we refrain from addressing whether any of the "officers" are entitled to qualified immunity for purposes of their motion.

[16] We have supplemental jurisdiction over Barrick's state law claims pursuant to 28 U.S.C. § 1367.

*generally Young v. Bethlehem Area Vo-Tech Sch.*, No. 06-CV-2285, 2007 WL

674617, at *11 (E.D. Pa. 2007) (denying defendants' motion to dismiss as to

plaintiff's invasion of privacy claim because invasion of privacy is an intentional

tort, and therefore, defendants were not entitled to official immunity under the

PSTCA); *Hernandez v. York Cty.*, No. 3:06-CV-1176, 2007 WL 4198017, at *6

(M.D. Pa. 2007) (explaining that plaintiff's complaint alleged several intentional

torts, including trespass, and therefore, if defendant acted with willful misconduct,

he would not be entitled to official immunity under the PSTCA); *Dommel*

*Properties, LLC v. Jonestown Bank & Trust Co.*, No. 1:11-CV-2316, 2013 WL

1149265, at *13 (M.D. Pa. 2013) (denying defendants' motion to dismiss as to

plaintiff's conspiracy claim because conspiracy is an intentional tort, and therefore,

the defendants were not entitled to official immunity under the PSTCA); *McHenry*

*v. Cty. of Delaware*, No. 04-1011, 2004 WL 2600975, at *3 (E.D. Pa. 2004)

(explaining that official immunity under the PSTCA does not extend to plaintiffs'

abuse of process claim, "as this claim is an intentional tort amounting to 'actual

malice' or 'willful misconduct'" and looking therefore to the sufficiency of

plaintiffs' allegations) (quoting *Kuzel v. Krause*, 658 A.2d 856, 859 (Pa. Commw.

Ct. 1995)).

### 1. Invasion of Privacy.[17]

We conclude that Barrick's amended complaint adequately states a claim for invasion of privacy against Officers Zampogna and Moench.   While the Defendants argue that Barrick's claim should be dismissed because he "fails to show that the entries intruded upon *his* seclusion," (*doc. 22* at 30) (emphasis in original)), we disagree.

Pursuant to Pennsylvania law, there are four tort claims based upon the invasion of privacy: (1) "intrusion upon seclusion;" (2) "appropriation of name or likeness;" (3) "publicity given to private life;" and (4) "publicity placing a person in a false light."  *Santillo v. Reedel*, 430 Pa.Super. 290, 294 (1993).  A defendant is liable for the tort of intrusion upon seclusion "'when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs.'" *Merring v. City of Carbondale, Penn.*, No. 3:06-CV-895, 2008 WL 4682769, at *3 (M.D. Pa. 2008) (quoting *Harris v. Easton Pub. Co.*, 335 Pa.Super. 141, 153 (Pa. Super. Ct. 1984); *see also McGuire v. Shubert*, 722 A.2d 1087, 1092 (Pa. Super. Ct. 1998) ("In order to state a cause of action for invasion of privacy, the [plaintiffs must] aver that there was an intentional

---

[17] An invasion of privacy claim only arises under state law.  *See Rolax v. Whitman*, 53 F. App'x 635, 638 (3d Cir. 2002) ("An invasion of privacy claim is not a constitutional tort, however, but rather a creature of state law.").  Thus, we have construed Barrick's amended complaint as raising an invasion of privacy claim under state law.

intrusion on the seclusion of their private concerns which was substantial and highly offensive to a reasonable person."). "The tort may occur by (1) physical intrusion into a place where the plaintiff has secluded himself or herself; (2) use of the defendant's senses to oversee or overhear the plaintiff's private affairs; or (3) some other form of investigation or examination into plaintiff's private concerns." *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 621 (3d Cir.1992). "Unlike other privacy torts, proof of publication is not a required element." *Konopka v. Borough of Wyoming*, 383 F. Supp. 2d 666, 684 (M.D. Pa. 2005) (citing *Borse*, 963 F.2d at 621).

Here, Barrick has sufficiently alleged an invasion of privacy claim based on the theory of intrusion upon seclusion. According to the amended complaint, Barrick alleges that Officers Zampogna and Moench broke *his* basement door and illegally entered *his* house on multiple occasions. *Doc. 12* at ¶¶ 20-23, 33-34, 56-59; *id.* at 16. Barrick further alleges that the officers entered *his* home, without permission, a warrant, or exigent circumstances, in order to harass, intimidate him, and "to find alleged stolen narcotics & TV's[.]" *Id.* at 16. Based upon these allegations, we conclude that the alleged intrusion into Barrick's home, and the investigation thereof, was intentional, substantial, and would be highly offensive to an ordinary reasonable person. *See Merring*, 2008 WL 4682769, at *4 (M.D. Pa. 2008) ("A defendant is not liable for this tort 'unless the interference with the

plaintiff's seclusion is substantial and would be highly offensive to the ordinary reasonable person.'" (quoting *Harris*, 335 Pa.Super. at 154)); *Borse*, 963 F.2d at 621 (identifying "physical intrusion into a place where the plaintiff has secluded himself or herself," as well as "investigation or examination into plaintiff's private concerns" as instances where the tort of intrusion upon seclusion may occur); *Muhammad v. United States*, 884 F. Supp. 2d 306, 317 (E.D. Pa. 2012) (concluding that plaintiffs adequately pled an intrusion upon seclusion claim where officers physically intruded into the plaintiffs' home and conducted an evasive search, and further concluding that since plaintiffs had pled that the officers entered and searched without a consent or a search warrant, the officers' intrusion was intentional).   Accordingly, Barrick's invasion of privacy claim, based on a theory of intrusion upon seclusion, should proceed against Officers Zampogna and Moench.

### 2. Trespass.

Barrick's amended complaint also adequately states a claim for trespass against Officers Zampogna and Moench.   Although the Defendants argue that Barrick's trespass claims should be dismissed because he has "not demonstrate[d] that any Defendant unlawfully entered the property" (*doc. 22* at 33), we disagree. Under Pennsylvania law, trespass "is defined as an 'unprivileged, intentional intrusion upon land in possession of another,'" *Boring v. Google Inc.*, 362 F.

34

App'x 273, 280 (3d Cir. 2010).   We have already concluded that Barrick has alleged facts to show that Officers Zampogna and Moench entered his property without permission.   Thus, Barrick has adequately stated a claim for trespass against Officers Zampogna and Moench.   *See id.* at 281 (concluding that because the plaintiffs alleged that the defendant entered upon their property without permission, the plaintiff had adequately stated a claim for trespass under Pennsylvania law).

### 3. Conspiracy

Barrick's conspiracy claim against Officer Zampogna and Chief Pickles also passes muster.   As previously set forth, "'[t]he essential elements of a claim for civil conspiracy[, under Pennsylvania law,] are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.'"   *Williams*, 2013 WL 4718920, *8 (quoting *Phillips*, 959 A.2d at 437).   Although the Defendants, in passing, cite case law for the proposition that Barrick must "identify an actionable underlying tort," in order to establish his conspiracy claim (*doc. 22* at 25 (citing *Platek v. Safeguard Props.*, 2014 U.S. Dist. LEXIS 83322, at *7 (W.D. Pa. June 19, 2014)), we are unpersuaded by such citation, as Barrick has sufficiently alleged the tort of trespass.   Moreover, and as we have already determined, Barrick has

raised an inference of an agreement between Officer Zampogna and Chief Pickles to deprive Barrick of a protected right, an act in furtherance of that agreement, and resulting damage.   Thus, Barrick's amended complaint adequately states a conspiracy claim under Pennsylvania law.

### 4. Abuse of Process

Barrick's amended complaint also adequately states an abuse of process claim against Officers Zampogna and Moench.   "[A]n abuse of process is a 'perversion' of legal process, one that is used by a party 'primarily to accomplish a purpose for which the process was not designed.'" *Abdullah v. Fetrow*, No. 1:05-CV-1135, 2006 WL 1274994, at *7 (M.D. Pa. 2006) (quoting *Gen'l Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003)).   "Generally speaking, to recover under a theory of abuse of process, a plaintiff must show that the defendant used legal process against the plaintiff in a way that constituted a perversion of that process and caused harm to the plaintiff."   *Gen'l Refractories Co.*, 337 F.3d at 304 (citing *Hart v. O'Malley*, 436 Pa.Super. 151, 647 A.2d 542, 551 (1994); *Rosen v. Am. Bank of Rolla*, 426 Pa.Super. 376, 627 A.2d 190, 192 (1993).   Here, we have already found that Barrick has adequately stated a § 1983 abuse of process claim.   For those same reasons, we also find that Barrick has adequately sated a common law tort of abuse of process against Officers Zampogna and Moench.

### 5. Negligence and Negligent Hiring.

The amended complaint, however, fails to state a claim for negligence or negligent hiring. As previously discussed, the PSTCA grants "broad immunity" to local agencies and their employees from tort suit. *Gines by Gines v. Bailey*, No. 92-4170, 1992 WL 394512, at *5 (E.D. Pa. 1992). The only exceptions to this broad grant of immunity are those outlined in the Act, *see* 42 Pa.Cons.Stat.Ann. §§ 8542 & 8550. *Bailey*, 1992 WL 394512, at *5. Here, no alleged negligent act of the Defendants falls within any of those exceptions. Therefore, Barrick's negligence and negligent hiring claims should be dismissed from this action. *See Hernandez*, 2007 WL 4198017, at *6 ("[The defendant] is immune from the Plaintiff's claims for negligence, gross negligence, negligent hiring, negligent training, negligent retention, and negligent supervision pursuant to Section 8545 [of the PSTCA].").

### 6. Harassment and Intimidation.

The Defendants correctly argue that "'Pennsylvania courts have not recognized a separate tort of harassment.'" *Doc. 22* at 33 (citing *Prukala v. Elle*, 2014 WL 1311125 (M.D. Pa. 2014)). Thus, we decline, as have most courts have, to recognize Barrick's claim for harassment. *See Prukala*, 2014 WL 1311125, at *5 ("'Pennsylvania courts have not . . . recognized a separate tort of harassment.'" (quoting *DeAngelo v. Fortney*, 357 Pa.Super. 127, 132, 515 A.2d 594, 596

(1986))); *UTZ v. Johnson*, No. 04-CV-0437, 2004 WL 1368824, at *2 (E.D. Pa. 2004) (collecting cases) ("We note that most courts that have addressed this issue have declined to recognize claims for harassment and/or prima facie tort in Pennsylvania."); *Abdullah*, 2006 WL 1274994, at *8 ("Finally, there does not exist a cause of action for 'harassment' under Pennsylvania law.").[18]   Thus, we recommend that Barrick's harassment claim against Officer Zampogna be dismissed.

Similarly, the Defendants argue that they are "unaware of any tort for 'intimidation'." *Doc. 22* at 33.  Barrick has not cited any federal law or statute under which his intimidation claim may arise, and therefore, we recommend that Barrick's claims for intimidation be dismissed.

### 7.   Intentional Infliction of Emotional Distress and Defamation/Loss of Job Claims.

Barrick, in his brief in opposition to the Defendants' motion to dismiss, states that "[he] dismisses [his] claim for intentional infliction of emotional distress." *Doc. 37* at 24.  Similarly, Barrick also states that he "dismisses the 'Def[a]mation Claim[.]'" *Id.* at 15.  Thus, we need not address either claim, and we accordingly recommend dismissing both claims from this action.

---

[18] We note that to the extent Barrick is attempting to bring a federal "harassment" claim, he has not cited to any federal cause of action for "harassment." *See Greenblatt v. Klein*, No. 15-1753, 2015 WL 8598245, at *2 (3d Cir. 2015) (affirming district court's grant of summary judgment in favor of the defendant, where the plaintiff failed to identify any federal cause of action for "harassment").

## V. Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  The court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.*

For the reasons stated herein, we recommend that Barrick be granted leave to file a second amended complaint, except to the limited extent that amendment would be futile as to Barrick's claims for harassment, negligence, and negligent hiring.  Any second amended complaint shall be complete in all respects.  It shall be a new pleading which stands by itself as an adequate complaint without reference to the complaints already filed.  It shall not incorporate by reference any of the previous complaints.  And finally, any second amended complaint shall be titled as a second amended complaint and shall contain the docket number of this case.[19]

_____

[19] We address one remaining flaw in Barrick's amended complaint.  "Local Rule of Court 8.1 prohibits claims for sum certain damages except as necessary to establish minimum jurisdictional amounts in controversy." *Hohmann v. Hobble*, No. 1:15-CV-1240, 2016 WL 213515, at *4 (M.D. Pa. 2016). "Courts in this district routinely strike specific requests for unliquidated damages pursuant to this rule." *Id.* (collecting cases). Thus, any amended pleading filed by Barrick, should he choose to file one, shall comply with the Local Rules of Court.

## VI. Recommendation.

Accordingly, based on the foregoing reasons, **IT IS RECOMMENDED** that the Defendants' collective motion (*doc. 20*) to dismiss be **GRANTED** in part and **DENIED** in part as follows:

(1) With respect to Officer Zampogna, we recommend that the Defendants' motion be **GRANTED** with respect to Barrick's harassment claim, intimidation claim, and negligence claim. We further recommend that the Defendants' motion be **DENIED** with respect to Barrick's unlawful search claim, conspiracy claims, retaliation claim, abuse of process claims, invasion of privacy claim, and trespass claim.

(2) With respect to Officer Moench, we recommend that the Defendants' motion be **GRANTED** with respect to Barrick's conspiracy claims and negligence claim. We further recommend that the Defendants' motion be **DENIED** with respect to Barrick's unlawful search claim, abuse of process claims, invasion of privacy claim, and trespass claim.

(3) With respect to Chief Pickles, we recommend that the Defendants' motion be **GRANTED** with respect to Barrick's negligence and negligent hiring claims. We further recommend that the Defendants' motion be **DENIED** with respect to Barrick's conspiracy claims and failure to supervise claim.

(4) With respect to Penn Township, we recommend that the Defendants' motion be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Plaintiff be **GRANTED** leave to amend his amended complaint.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **1st** day of **March**, **2016**.


**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge